# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00568-CV

**Robert Johnson, Appellant**

**v.**

**Ingram Readymix, Inc. and Richard White, Appellees**

### FROM THE DISTRICT COURT OF LLANO COUNTY, 424TH JUDICIAL DISTRICT
### NO. 16011, HONORABLE DANIEL H. MILLS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Ingram Readymix, Inc. ("Ingram"), appellee, sued Richard White and Patricia White, doing business as Pat-Rick Enterprises, Inc., and appellant Robert Johnson, individually, after a dispute arose regarding payment for concrete that Ingram Readymix had supplied to two properties owned by Johnson.[1]  White also filed a cross-action against Johnson.  After a bench trial, the trial court rendered judgment in favor of Ingram and White against Johnson.  Johnson appeals the trial court's judgment, arguing that the trial court abused its discretion in:  (1) denying Johnson's motion for continuance, and (2) striking amended pleadings that Johnson filed eight days before trial. Because we find no error in the trial court's determinations, we affirm the trial court's judgment.

---

[1]  Ingram later non-suited Patricia White.  For the remainder of this opinion, all references to "White" are references to Richard White.

## BACKGROUND

The record shows that Robert Johnson owned two lots in a subdivision called Lago Escondido in Horseshoe Bay, Texas. Johnson hired Richard White to do concrete work on the lots. White entered into an agreement with Ingram in which Ingram agreed to supply concrete to be used in the projects. Ingram provided the concrete as agreed. When Ingram did not receive payment from White by the due date, Ingram sent notice of the unpaid balance to White and Johnson. Ingram also filed mechanic's and materialmen's lien affidavits on Johnson's lots. Ingram still did not receive payment. As a result, Ingram filed suit against White to recover on a sworn account and against Johnson to foreclose on the liens on Johnson's lots. Johnson filed a general denial. White filed a cross-action against Johnson, alleging that Johnson breached a contract by not paying White for the concrete services White had provided on Johnson's lots.

The trial court scheduled the trial for May 26 and May 27, 2009. In February 2009, Johnson's counsel filed a motion to withdraw from the case. The trial court granted the motion at the end of that month, on February 26, 2009. Johnson obtained new counsel on approximately May 7, 2009. On May 18, 2009, Johnson filed an amended answer, counterclaims, and crossclaims. In addition, he filed a plea in intervention on behalf of a corporation that he owned. On the same day, Johnson also filed a motion for continuance. In the motion, Johnson argued that he had not retained his new counsel until approximately May 7, 2009, and that his new counsel did not have sufficient time to prepare for a trial setting on May 26, 2009. Johnson also noted that his counsel had a conflict on May 26 because he would be attending a hearing that afternoon and would also be preparing for another hearing scheduled to take place later that week.

The trial court held a telephone conference with the parties to address Johnson's motion for continuance. At the conclusion of the conference, the trial court denied the motion. The record does not contain a transcript of the conference, but the trial court addressed the conference on the day of trial, stating that the trial court had denied Johnson's motion for continuance because the trial court had provided three alternative dates for trial, and the parties had rejected all of them. The trial court also noted that Johnson had not obtained a new attorney until only about three weeks before trial.

The case proceeded to a bench trial on its originally scheduled date, May 26, 2009. Johnson appeared at trial pro se. In a pretrial hearing, Ingram and White objected to Johnson's filing of his amended answer, counterclaims, crossclaims, and plea in intervention and asked the trial court to strike the pleadings on the grounds that the pleadings were filed only eight days before trial and added claims and defenses that acted as a surprise. The trial court agreed with Ingram and White and struck Johnson's pleadings. Also before trial, Ingram and White agreed to an interlocutory judgment in Ingram's favor. The trial proceeded, and after hearing the evidence, the trial court rendered judgment in favor of Ingram against Johnson. The trial court then heard evidence regarding White's cross-claims against Johnson and rendered judgment in favor of White. This appeal followed.

**DISCUSSION**

On appeal, Johnson challenges the trial court's decisions to (1) deny his motion for continuance, and (2) strike his amended pleadings. In reviewing both issues, we use an abuse of discretion standard. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004)

3

(motion for continuance); *Hardin v. Hardin*, 597 S.W.2d 347, 348-49 (Tex. 1980) (striking pleadings). The trial court's ruling will not be reversed unless the record shows a clear abuse of discretion. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986). After reviewing the entire record, we may reverse for an abuse of discretion only if we determine that the trial court's ruling was clearly arbitrary and unreasonable. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002).

### *Motion for Continuance*

Johnson contends that the trial court abused its discretion in denying his motion for continuance because the ruling forced him to go to trial without counsel, thus failing to provide him a fair trial. In civil cases in which the absence of counsel has been urged as grounds for a continuance, courts have required a showing that the failure to be represented at trial was not due to the party's own fault or negligence. *See State v. Crank*, 666 S.W.2d 91, 94 (Tex. 1984); *Ayati-Ghaffari v. H-Ebrahimi*, 109 S.W.3d 915, 916 (Tex. App.—Dallas 2003, no pet.).

Here, Johnson's first attorney withdrew on February 26, 2009, three months before the trial date. In Johnson's motion for continuance, he stated that he initially spoke with his new counsel on May 7, 2009, more than two months after his first attorney had withdrawn and approximately three weeks before trial. Regarding the time it took him to find new counsel, Johnson stated in his motion that he "used the time after his attorney withdrew to obtain funds to have an attorney and to find an attorney. He called, talked and met with attorneys, but could not find one sooner than he did."

The record does not contain a transcript of the telephone conference in which the trial court denied Johnson's motion for continuance, but the trial court summarized the conference on the day of trial as follows:

Court:      [T]he issue came up about whether this bench trial should be continued. And, for the record, this bench trial was originally scheduled for this date back in January. [Counsel for Ingram] sent out notices that are in the file. I believe some time in February, Mr. Johnson, you terminated your employment with your first attorney. You did not seek to hire another attorney until probably a couple of week[s] ago. You can tell me if that's not accurate.

Johnson:    About three weeks ago.

Court:      About three weeks ago. And your attorney filed this motion for continuance and advised the Court that he could not be ready to represent you on that short of notice, so that put us in the dilemma of what to do with this bench trial date. The plaintiff had some concern regarding the delay and how it might impact a lien if there was a foreclosure by a financial institution. Was it a bank?

Ingram:     Yes, sir.

Court:      Okay. And we discussed all those matters on the telephone. I think we spent about a half-an-hour in that conference call last week. The Court then provided three alternative dates to when we could attempt to try this case if we gave you additional time and all three of those dates were rejected by the parties. And so at that time the Court decided to deny your motion for continuance just because of that very fact that I have a limited number of days to hear cases and trying to get people to agree was very difficult with giving three dates and nobody could agree because of—there were vacations involved, and I don't remember what the other facts were. But that's why we're here today and I'm just putting on the record that's why I denied that continuance.

Although the trial court did not address Johnson's reasons for the delay in hiring new counsel, Johnson stated his reasons in his motion for continuance. There, he gave only a general

5

explanation of the delay. For example, he stated that he "talked and met with attorneys," but he did not provide details as to who he spoke with, when he spoke with them, or why they did not end up representing him. Instead, he stated only that he "could not find one sooner than he did." Given the lack of specificity with which Johnson explained the delay in obtaining new counsel, the trial court could have reasonably concluded that Johnson did not carry his burden of showing that the delay was not caused by his own fault or negligence. *See Ayati-Ghaffari*, 109 S.W.3d at 916-17. Further, as the trial court stated, even when the trial court tried to reschedule the trial, the parties could not agree on a new trial date.[2] Considering all the circumstances of this case and taking into account the abuse of discretion standard with which we must review the trial court's determination, we conclude that the trial court did not abuse its discretion in denying Johnson's motion for continuance.[3]

---

[2] The record does not show which parties objected to which trial dates.

[3] In support of his argument, Johnson cites *Thrower v. Johnston*, 775 S.W.2d 718, 720 (Tex. App.—Dallas 1989, no writ), which states that "the absence of counsel—or at least the lack of counsel—can, in a proper case, be a sufficient ground for a continuance." In *Thrower*, the Dallas court held that the trial court abused its discretion in denying the defendants' motion for continuance because the defendants' attorney appeared personally before the trial court and provided specific and sufficient information about a conflicting special setting in which he was both counsel and plaintiff, and because the trial court further refused to reinstate the case when the defendants' attorney later obtained release from the special setting in time to start trial in the afternoon of the original trial date. 775 S.W.2d at 721.

*Thrower* is distinguishable from this case because in *Thrower*, there was never an issue regarding whether the defendants themselves were at fault or negligent in failing to be represented at trial. The defendants had no involvement in the situation that left them without representation. Rather, the defendants' attorney had another special setting from which he found it difficult to get released. Here, Johnson was involved in the events that left him without an attorney on the day of trial, and whether he was at fault for lacking representation is the central issue in determining whether the trial court erred in denying a motion for continuance based on lack of counsel. *See State v. Crank*, 666 S.W.2d 91, 94 (Tex. 1984); *Ayati-Ghaffari v. H-Ebrahimi*, 109 S.W.3d 915, 916 (Tex. App.—Dallas 2003, no pet.). Johnson's original counsel withdrew from the case three months before trial, but Johnson did not obtain new counsel until less than three weeks before trial. Thus, the circumstances here are distinguishable from those in *Thrower*.

6

*Striking of Pleadings*

In his second issue, Johnson asserts that the trial court erred in striking the amended pleadings he filed eight days before trial. Johnson contends that Ingram and White did not establish that they were surprised by the contents of the pleadings. Parties may amend their pleadings, but the amendments may not operate as a surprise to the opposite party. *See* Tex. R. Civ. P. 63. The party opposing the amendment generally has the burden to show prejudice or surprise. *See Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex. 1990). However, the trial court may conclude that the amendment on its face is calculated to surprise or that the amendment would reshape the cause of action, prejudicing the opposing party and unnecessarily delaying the trial. *See id*. at 940; *Hardin*, 597 S.W.2d at 349. In that case, the opposing party does not have the burden to show prejudice or surprise, and an objection will suffice. *See Greenhalgh*, 787 S.W.2d at 940 n.3; *Perez v. Embree Constr. Group, Inc.*, 228 S.W.3d 875, 883 (Tex. App.—Austin 2007, pet. denied).

Here, the lawsuit was filed on June 13, 2008. Johnson filed a general denial on September 30, 2008. Then, eight days before trial, on May 18, 2009, Johnson filed an amended answer, counterclaims, crossclaims, and a plea in intervention. Specifically, Johnson attempted to join his company, Discovery Resource Group, LLC ("Discovery"), as a party in the case. He also raised sixteen new defenses, including payment to White, denial of a sworn account, denial that Johnson was liable in the capacity in which he was sued, denial that Johnson entered into any agreements with the other parties, failure of consideration, statute of limitations, waiver, release, offset, negligence, breach of warranty, deceptive trade practices, breach of contract, untimely and/or defective lien filings, defect of parties, and lack of notice from Ingram as to unpaid sums. In

7

addition, Johnson and Discovery filed four cross-claims against White, including causes of action for breach of warranty, breach of contract, deceptive trade practices, and negligence. Johnson also sought declaratory judgment against Ingram and White.

In a pretrial hearing, Ingram and White argued that Johnson's amended pleadings acted as a surprise. Ingram's counsel pointed out that the amended pleadings added a new party and a multitude of defenses and claims that were never mentioned before. Ingram's counsel also pointed out that Ingram and White had attempted to take Johnson's deposition on three occasions but that Johnson rescheduled twice and filed a motion to quash the third setting. White's counsel argued that Johnson's pleadings should be struck because the case had been set for almost a year, and Johnson was "now suing [White] for all kinds of money eight days before trial [began]" and had not appeared for a deposition even though he was a key person with factual information.

In response, Johnson explained that he told his original attorney that he could not attend the first scheduled deposition and asked that it be rescheduled. Johnson stated that he planned to attend the rescheduled deposition, but he needed to spend two days preparing for it, and he could not spare three days that week. His attorney threatened to withdraw and then did withdraw because Johnson would not prepare for and attend the rescheduled deposition. Johnson stated that he filed a motion to quash the next rescheduled deposition because the deposition was set to take place in San Antonio, and he felt that San Antonio was an unreasonable location considering he lived in Austin and had filed the case in Llano County. He also wanted to have a new attorney before the deposition took place. Regarding the issue of surprise, Johnson stated: "I realize that there [are] some things in the amended petition that might be considered surprise, like the cross claims, but there [are] other things that are no surprise."

After listening to all the parties, the trial court struck the amended pleadings, stating: "Looking at the pleadings and seeing all the claims that were added, basically, last Monday when this matter had been set for trial since January of this year, the Court is going to strike those pleadings and not allow those issues to be raised." In a later-filed order memorializing the trial court's ruling, the trial court specifically stated that it struck Johnson's pleadings because the pleadings "acted as a surprise."

During trial, after Ingram had rested its case, Johnson again raised the issue of his amended pleadings with the trial court. He argued that some of the claims and defenses he had set forth in his amended pleadings were not a surprise because he had generally made mention of the subject-matter of some of the claims and defenses in his responses to discovery requests. Specifically, Johnson argued that the following responses to White's requests for disclosure put Ingram and White on notice of some of the claims and defenses in his amended pleadings:

Request: The legal theories and, in general, the factual bases of the responding party's claims or defenses.

Response: [White] breached the contract by failing to perform as promised and failing to complete the job, therefore [Johnson] is excused from performing by [White's] prior breach.

Request: The amount and any method of calculating economic damages.

Response: [Johnson] has not yet calculated the actual damages resulting from [White's] breach. The damages include cost of completion for [White's] improper and incomplete work and costs of delay resulting from [White's] improper and incomplete work.

9

Johnson also argued that the following responses to White's interrogatories put Ingram and White on notice of some of the claims and defenses in his amended pleadings:

Interrogatory: State the percentage of completion of [White's] foundation contract for [one of Johnson's lots].

Response: Significantly less than 100%—do not know precisely how much.

Interrogatory: State the percentage of completion of [White's] foundation contract for [Johnson's other lot].

Response: Significantly less than 100%—do not know precisely how much.

Interrogatory: [S]tate the factual basis for your contention, if any, that the lien [on one of Johnson's lots] is invalid, or that the lien claim is for a different amount.

Response: [Ingram] did not notice all the parties correctly.

Interrogatory: [S]tate the factual basis for your contention, if any, that the lien [on Johnson's other lot] is invalid, or that the lien claim is for a different amount.

Response: [Ingram] did not notice all the parties correctly.

After hearing Johnson's renewed arguments and reviewing the evidence presented by Johnson, the trial court still determined that the amended pleadings operated as a surprise and reaffirmed its previous ruling striking the pleadings.

Johnson contends that all of the provisions he has cited to from his responses to White's requests for disclosure and interrogatories show that Ingram and White could have anticipated and should not have been surprised by his cross-claims for breach of contract and

negligence and his defenses of offset, payment, denial of sworn accounts, and defective lien filings.[4]

Johnson also argues on appeal (but did not argue in the trial court) that letters in the record from White to Johnson from before trial show that White knew that Discovery, and not Johnson, was the party that contracted with White because the letters were addressed to both Johnson and Discovery and referred to both Johnson and Discovery when discussing the payment due to White. Johnson also cites to his own testimony at trial during which he discussed his ownership of Discovery and stated that Discovery was the entity that employed White. Johnson points out that White's counsel asked questions indicating that he knew that Discovery was a contracting party. However, we note that the part of the questioning that Johnson refers to dealt with a contract between Discovery and another company owned mostly by Johnson, not a contract with White. In any case, Johnson contends that the references to Discovery establish that Ingram and White should not have been surprised when Discovery attempted to intervene in the suit and when Johnson raised a defense denying that he was liable in the capacity in which he was sued.

Although the cited documents make general mention of an alleged breach of contract, White's alleged incomplete work, and Discovery's alleged involvement in the business relationship between White and Johnson, Johnson did not take any steps to make Ingram and White aware that he would be addressing these or any other issues at trial until eight days before trial began. He did not name any expert witnesses, did not amend his pleadings to reflect any of the issues until eight days before trial, and did not attend any of three scheduled depositions at which he could have

---

[4] Johnson concedes in his brief that Ingram and White would likely have been surprised by his defenses of statute of limitations, waiver, and release. He also concedes that Ingram and White would likely have been surprised by his cross-claims for deceptive trade practices and breach of warranty.

11

identified and expounded upon the issues and made them officially known to Ingram and White. Instead, he relied only on his general denial until eight days before trial. Further, when he did amend his pleadings, he made extensive, substantive changes, adding sixteen new defenses, four cross-claims, and a request for declaratory judgment. Given that the lawsuit had been pending for almost a year, that Johnson had only a general denial on file until eight days before trial, and that before that time, he made no effort through amendments or deposition testimony to alert Ingram and White to the multitude of claims and defenses he intended to raise at trial (all of which were substantive changes that would have required extensive trial preparation by Ingram and White), the trial court could have reasonably concluded that the amendments would reshape the cause of action, prejudicing Ingram and White, and unnecessarily delaying the trial. *See Greenhalgh*, 787 S.W.2d at 940; *Hardin*, 597 S.W.2d at 349. Accordingly, we conclude that the trial court did not abuse its discretion in striking Johnson's amended pleadings.

## CONCLUSION

Because we have overruled both of Johnson's issues, we affirm the trial court's judgment.

_____

David Puryear, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed: December 23, 2010